[Nos. A034136, A034138, A034139, A034249. First Dist., Div. Three. Mar. 19, 1987.]

In re DAVID ESCO WELCH on Habeas Corpus.

**COUNSEL**

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Paul D. Gifford and Bruce M. Slavin, Deputy Attorneys General, for Appellant.

James R. Jenner, Public Defender, and Richard W. Zimmer, Assistant Public Defender, for Respondent.

**OPINION**

**WHITE, P. J.**—This is a People's appeal from an order of the Alameda County Superior Court granting a petition for writ of habeas corpus by David Esco Welch and ordering his parole-free release from custody. The People contend that defendant is subject to further parole conditions and restraints. We agree.

The issue is whether defendant was on parole on August 9, 1985, when his parole was revoked. Our first task is to examine the various sentences he received to determine when defendant was entitled to release from imprisonment. Once this date is established, we apply the applicable law to determine whether defendant was on parole when his parole was revoked. If he was on parole, the People's contention has merit. If not, the court correctly concluded that the parole board had no authority to revoke defendant's parole.

Defendant was sentenced on May 29, 1981, on information Nos. 69354 (burglary and auto theft) and 70554 (assault). His sentence on 69354 was five years and eight months (later reduced to four years and eight months); he received a three-year concurrent term on 70554. On August 8, 1981, he was sentenced in action 71880 (theft). The term imposed was eight months, although the court did not designate whether the sentence was concurrent or consecutive. On April 7, 1983, defendant received a two-year term in H4771 (battery) consecutive to 69354 and 70554. The court did not designate how the sentence was to run in relation to 71880.

On January 23, 1985, a writ of habeas corpus was granted reversing the conviction in 69354. On January 31, defendant was ordered released from prison on his own recognizance. In March, defendant contacted the Department of Corrections to request parole release funds. On May 29, 1985, defendant signed a Notice and Conditions of Parole. His parole date was retroactively computed to be October 1984, and he was placed on three years parole. Defendant was taken into custody in June 1985 on an assault charge. On August 9, defendant's parole was revoked for one year and he was returned to state prison. Defendant filed a petition for writ of habeas corpus contending his earlier release was parole-free. The petition was granted and the court ordered defendant's release without conditions of parole. This appeal followed.

We agree with the parties that *In re Kemper* (1980) 112 Cal.App.3d 434 [169 Cal.Rptr. 513] presents an analogous factual situation and guides our method of inquiry. The petitioner in *Kemper* was given a three-year sentence. He had served nearly two years when his sentence was modified to sixteen months. He was paroled shortly thereafter and several months later his parole was suspended. He argued he had already completed a year of nonsuspended parole by the time of the suspension order. The court agreed and ordered his release without parole. The court reasoned that it would be unjust not to have his excess prison term credited against his parole period. Therefore, his parole should be deemed to have begun running on the date petitioner should have been released. Since the suspension order occurred more than one year after that date, the parole board had no jurisdiction to revoke his parole. (*Id.,* at pp. 438-439.)

■ *Kemper* directs that we first determine when defendant should have been released from prison. We must, of course, disregard the overturned four-year and eight-month sentence in 69354. We therefore begin with 70554. The record reflects defendant received a three-year term for 70554. Sentence was imposed on May 29, 1981. Defendant received 40 days credit, 27 attributable to presentence credit. We can thus deduce that defendant began serving the 70554 term on May 2, 1981, and this sentence expired on April 20, 1984, not accounting for credit earned in custody. The record does not disclose how much credit defendant earned while serving this term.

Defendant was given two other sentences while serving his three-year sentence. 71880 resulted in a midterm sentence, reduced by 148 days of credit. It is unclear whether this sentence was intended to be consecutive or concurrent. The court used the abstract of judgment form entitled "Commitment Single or Concurrent Count Form (Not to Be Used for Multiple Count Convictions nor Consecutive Sentences)." On the other hand, the court imposed an eight-month sentence, one-third of the two-year midterm for theft, indicating it intended 71880 to be a subordinate term. The court need only calculate a subordinate term sentence if the sentence is consecutive. (Pen. Code, § 1170.1, subd. (a).)

Sentence on H4771 was imposed in April 1983. The court designated it as an eight-month subordinate term. The sentence was made consecutive to 70554, but the court did not indicate how it ran relative to 71880.

Given these facts, we calculate that defendant should have served three years and eight months in prison. Three years are attributable to 70554. Eight months are attributable to H4771. No time is attributable to 71880. Even if 71880 was consecutive to 70554, it was reduced by 148 days credit, thus was shorter than H4771, for which no presentence credit was given. The absence of a designation on H4771 relative to 71880 means that if 71880 was consecutive to 70554, H4771 ran concurrently with 71880. (See Pen. Code, § 669 ["Upon the failure of the court so to determine how the terms of imprisonment on the second or subsequent judgment shall run, the term of imprisonment on the second or subsequent judgment shall run concurrently."].) Therefore, defendant was entitled to release when his sentence on H4771 expired.

We cannot, on this record, determine with certainty defendant's proper release date. The latest date a three-year and eight-month sentence could have expired is December 20, 1984. However, defendant could earn conduct credit while in custody to reduce his time by one-third (Pen. Code, § 2931) and by one-half after January 1, 1983. (Pen. Code, §§ 2933, 2934.) The record does not reveal the amount of credit defendant actually earned. He did,

however, testify that he was receiving one-third credit and lost 60 days due to misconduct. We can calculate, therefore, that the earliest defendant should have been released, assuming he earned all possible one-third credits minus 60 days, was December 1983.

Applying *Kemper* to this case, would, at first glance, indicate that the Department of Corrections had no jurisdiction to revoke his parole on August 9, 1985, since that date was more than a year after he was entitled to be released. However, the People correctly point out that the law concerning parole has changed since *Kemper* was decided.

When Kemper committed his crime, Penal Code section 3000, subdivision (a), provided for release on parole of a determinate sentence prisoner "for a period not exceeding one year." (Stats. 1977, ch.2, § 5, p. 10.) When defendant in this case committed his crimes, the statute had been amended to allow parole "for a period not exceeding three years." (Stats. 1978, ch. 582, § 1, p. 2003.) Defendant's period of parole was in fact set at three years. The People argue that the excessive time served should be reduced from three years so that even if defendant's prison term ended in December 1983, he was on parole when his parole was revoked.

Defendant counters by relying on Penal Code section 3001, subdivision (a), enacted simultaneously with the amendment of Penal Code section 3000. (Stats. 1978, ch. 582, § 2, p. 2004.) Section 3001 provides that when a determinate sentence prisoner "has been released on parole from the state prison, and has been on parole continuously for one year since release from confinement, the board shall, within 30 days, discharge such person from parole, unless the board, for good cause, determines that such person will be retained on parole."

We believe defendant misconceives the nature of section 3001. The statute does not automatically entitle a parolee to discharge from parole after one year. The board must act to either discharge the parolee from or retain him on parole. In this case the board did not act because defendant's release from incarceration did not correspond to the date he should have been released. We do not interpret section 3001 as providing for discharge from parole where the board has not acted in a timely manner. Rather, a parolee's parole is terminated only upon successful completion of his or her parole period or early discharge by the board. Section 3001 does not limit the board's authority to set a parole period for up to three years, and where, as here, a three-year period was set, section 3001 did not cause defendant's parole to automatically terminate after one year.

Defendant further contends that because he served more time than he should have, he was entitled to a parole-free release. He relies on Penal

Code section 1170, subdivision (a)(2), which in relevant part provides: "In any case in which the amount of preimprisonment credit under Section 2900.5 or any other provision of law is equal to or exceeds any sentence imposed pursuant to this chapter, the entire sentence, including any period of parole under Section 3000, shall be deemed to have been served and the defendant shall not be actually delivered to the custody of the Director of Corrections." We agree with the holding in *In re Jantz* (1984) 162 Cal.App.3d 412 [208 Cal.Rptr. 619], that the statute "does not permit releasing a defendant from the Board imposed parole unless the in-custody credits equal the total sentence, including both confinement time *and the period of parole.*" (*Id.,* at p. 415, italics added.) The Legislature has declared that parole "is critical to successful reintegration of the offender into society and to positive citizenship." (Pen. Code, § 3000.) The result in *Jantz* is especially appropriate where, as here and in *Jantz,* the defendant was entitled to release because his underlying conviction was reversed, as opposed to where a defendant's accumulation of actual presentence credit exceeds the sentence to which the credit was attributable.

Since we conclude that defendant was on parole at the time his parole was revoked, we reverse the order of the court, dated January 23, 1986, granting defendant's petition for writ of habeas corpus, and remand to the court for proceedings consistent with the views expressed herein.

Scott, J., and Merrill, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 1, 1987.